IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CIVIL ACTION NO. _____ |
| Plaintiff, | ) ) | |
| | ) | **COMPLAINT** |
| v. | ) ) | |
| IMPERIAL INVESTMENTS GREENVILLE, INC. and IMPERIAL INVESTMENTS GROUP, INC. | ) ) ) ) | **JURY TRIAL DEMAND** |
| Defendants. | ) ) ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to Tamara Byrd and other similarly situated females who were adversely affected by such practices. As more fully described below, Plaintiff Equal Employment Opportunity Commission ("EEOC" or the "Commission") alleges Defendants Imperial Investments Greenville, Inc. and Imperial Investments Group, Inc. (collectively "Defendants") subjected Byrd and other similarly situated females to a sexually hostile work environment because of their sex, female. The EEOC also alleges that Defendants discharged Byrd in retaliation for complaining about the sexual harassment.

JURISDICTION AND VENUE

1.  Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3)("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of South Carolina. This lawsuit is being filed in the Greenville Division because a substantial part of the events or omissions giving rise to the claims alleged in this suit occurred within the Greenville Division.

## PARTIES

3.  Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.  At all relevant times, Defendant Imperial Investments Greenville, Inc., ("Imperial Greenville") has been a South Carolina corporation doing business in the State of South Carolina and the City of Simpsonville, and has continuously had at least fifteen employees.

5.  At all relevant times, Defendant Imperial Investments Group, Inc., ("Imperial Group") has been a Georgia corporation doing business in the State of South Carolina and the City of Simpsonville, and has continuously had at least fifteen employees.

6.  On information and belief, at all relevant times Defendants have operated as an integrated business enterprise, or in the alternative, as joint employers in connection with the operation of a hotel doing business as Holiday Inn Express in the State of South Carolina and the City of Simpsonville (the "Hotel").

7. At all relevant times, Defendants jointly and/or severally have continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

## STATEMENT OF CLAIMS

8. More than thirty days prior to the institution of this lawsuit, Tamara Byrd filed a charge with the EEOC alleging violations of Title VII by Defendants doing business as Holiday Inn Express. All conditions precedent to the institution of this lawsuit have been fulfilled.

9. From around August 2007 through at least January 2009, Defendants engaged in unlawful employment practices at the Hotel in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a). Specifically, Defendants subjected Byrd and other similarly situated females to sexual harassment that created a sexually hostile work environment based on their sex, female. The sexual harassment was severe or pervasive and included, but was not limited to, unwelcome sexual comments, sexual requests and sexual touching. The sexual harassment was perpetrated by the Hotel's General Manager (the "General Manager") who supervised Byrd and the other similarly situated females.

10. More specifically, Byrd was subjected to unwelcome, severe or pervasive sexual comments, sexual advances, and sexual touching from about September 7, 2007 until October 5, 2007. The unwelcome sexual comments and conduct began when Defendants hired a new General Manager for the Hotel in August 2007. During Byrd's first meeting with the new General Manager, the General Manager made numerous comments about Byrd's appearance and how attractive he found her. The General Manager also questioned why Byrd did not have a boyfriend. The comments made Byrd uncomfortable and she attempted to change the subject. At the end of the meeting which occurred at a restaurant at the General Manager's request, the

3

General Manager told Byrd not to tell anyone about the meeting or Byrd would get "a spanking." Also at the conclusion of the meeting, the General Manager pulled Byrd toward him and hugged her.

11. Around September 11, 2007, the General Manager asked Byrd to go out with him for drinks. Byrd said no and headed towards the door. The General Manager then grabbed Byrd from behind, turned her around by her shoulders, and gave her a hug, pinning her to a wall. The General Manager then kissed Byrd on the forehead before Byrd pushed him off. The General Manager again told Byrd not to tell or she would get "a spanking."

12. On or around September 17, 2007, Byrd was in the General Manager's office conducting business and was seated next to the General Manager to review some documents. During the meeting, the General Manager began rubbing his crotch area through his pants. When the General Manager saw that Byrd had noticed him touching himself, he put his hand on Byrd's knee and then quickly moved it up Byrd's thigh. Byrd swept the General Manager's hand off her leg. When Byrd attempted to leave the General Manager's office, the General Manager again grabbed Byrd and gave her a kiss on the forehead. Byrd responded "What the hell" and left the office.

13. During the relevant time period, Byrd overheard the General Manager make jokes about the size of his penis to female employees, including comments such as "if they all got drunk and their clothes came off, it would not be pretty because he was not working with much." During one conversation with female staff, the General Manager stated that "before he'd serve alcohol [at a company party], all the girls would have to sleep with him."

14. On September 17, 2007, Byrd reported the General Manager's sexual comments, sexual advances, and sexual touching to the Defendants' Vice President of Operations (the "Vice

4

President"), who is employed at the corporate offices of Defendant Imperial Group. Specifically, Byrd reported the events of September 7, 11, and 14 to the Vice President, including the multiple times the General Manager had grabbed her and the incident when he rubbed his crotch in an obvious effort to arouse himself sexually while speaking to her. Byrd also reported her fear of working with the General Manager because she was alone at the front desk when she worked nights and the General Manager would occasionally spend the night at the Hotel.

15. Defendants failed to take appropriate remedial action in response to Byrd's complaint and failed to stop the sexual harassment. Rather, Defendants closed their investigation on the same day, after the General Manager denied the allegations.

16. Around September 25, 2007, after Byrd had reported the sexual harassment, the General Manager told Byrd that they could help each other out, that his feelings had not changed, and that he still wanted her. The General Manager then winked at Byrd.

17. On October 3, 2007, Byrd told the General Manager that she was being treated unfairly because he would not leave her alone. On October 5, 2007, Byrd was terminated by the General Manager for refusing his unwelcome sexual advances or in the alternative, in retaliation for her complaints of the sexual harassment. To the extent, Byrd was terminated in retaliation for opposing the sexual harassment, the Defendants further engaged in unlawful employment practices at the facility in violation of Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a).

18. Upon information and belief, Defendants subjected other similarly situated female employees to the sexually hostile work environment that they knew existed and which was created by the same General Manager who subjected Byrd to unwelcome sexual comments and conduct. The sexual comments and conduct that the General Manager engaged in was based on

sex, female, was severe or pervasive, and created a sexually hostile environment for females at the Hotel whom the General Manager supervised.

19. The effect of the practices complained of above have been to deprive Byrd and other similarly situated females of equal employment opportunities and otherwise adversely affect their status as employees because of their sex, female.

20. The unlawful employment practices complained of above were intentional.

21. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Byrd and other similarly situated females.

## PRAYER FOR RELIEF

A. Grant a permanent injunction enjoining Defendants, their officers, successors, assigns, and all persons in active concert or participation with it, from creating or maintaining a sexually hostile work environment or any other employment practice which discriminates on the basis of sex.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendants to make whole Byrd by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practice, including but not limited to reinstatement or front pay for Byrd.

D. Order Defendants to make whole Byrd and other similarly situated female employees by providing compensation for pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendants to make whole Byrd and other similarly situated female employees by providing compensation for non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to emotional distress, suffering, stress, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and/or loss of civil rights in amounts to be determined at trial.

F. Order Defendants to pay Byrd and other similarly situated female employees punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this the 16th day of November, 2010.

    Respectfully submitted,

    P. DAVID LOPEZ
    General Counsel

    JAMES L. LEE
    Deputy General Counsel

    GWENDOLYN YOUNG REAMS
    Associate General Counsel

    EQUAL EMPLOYMENT OPPORTUNITY

COMMISSION
131 M Street, N.E.
Washington, D.C. 20507

LYNETTE A. BARNES
Regional Attorney

TINA BURNSIDE
Supervisory Trial Attorney

**s/ NICHOLAS WALTER**
NICHOLAS WALTER
Trial Attorney (Fed. Bar No. 9975)
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, North Carolina 28202
Telephone: 704.954.6472
Facsimile: 704.954.6412
Email: Nicholas.Walter@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**